**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**MOBILE DIVISION**

| | | |
|---|---|---|
| **KINSALE INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO.: ---------** |
| | § | |
| **FRANCHISE MANAGEMENT, INC. d/b/a SUNNBUILDERS; and MICHAEL D. SANDERS & CHRISTINE POND SANDERS,** | § | |
| | § | |
| **Defendants.** | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff Kinsale Insurance Company ("Kinsale") and files this Complaint for Declaratory Judgment. In support of same, Kinsale states as follows:

1. This action for declaratory relief is brought to determine the rights, duties, status, and legal rights under the insurance policies described below.

**PARTIES**

2. Kinsale is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business in the Commonwealth of Virginia.

3. Franchise Management, Inc. d/b/a SunnBuilders ("SunnBuilders") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama.

4. Michael D. Sanders is an adult citizen and resident of the State of Alabama.

5. Christine Pond Sanders is an adult citizen and resident of the State of Alabama.

**JURISDICTION AND VENUE**

6. Kinsale invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

7. Kinsale is diverse from each defendant, and the amount in controversy exceeds $75,000.

8. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1), as a defendant resides in this District and all defendants are residents of the State of Alabama, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, or omissions giving rise to the asserted claims occurred in this District.

**FACTS**

9. Kinsale issued a Commercial General Liability insurance policy to SunnBuilders bearing policy number 0100045011-3 for the November 23, 2019 to November 23, 2020 policy period. Kinsale issued renewal policies bearing policy numbers 0100045011-4, 0100045011-5, and 0100045011-6 for the successive policy periods spanning November 23, 2020 to November 23, 2023 (collectively, the "policies").

10. The policies each contain a $1,000,000 Each Occurrence Limit, a $2,000,000 General Aggregate Limit, and a $2,000,000 Products/Completed Operations Aggregate Limit.

11. On March 4, 2020, Michael D. Sanders and Christine Pond Sanders (the "Claimants") entered into an agreement with Lowe's Home Centers, LLC ("Lowe's") to re-shingle the roof of their home, which was located in Mobile, Alabama.

12. Lowe's retained SunnBuilders to perform the work on the Claimants' roof.

13. SunnBuilders subcontracted with Rain Roofing, LLC ("Rain") to perform the labor on the Claimants' roof.

14. Rain performed the re-shingling work at the Claimants' home between March 30, 2020, and April 1, 2020.

15. Early in the work, potential cracks were identified in the brick parapet wall. Despite the cracks, the work continued and was completed on April 1, 2020.

16. On December 24, 2020, the Claimants suffered a fire loss at the home on the opposite side of the house from the parapet wall.

17. During the course of the repair from the fire, the Claimants were notified of significant water intrusion and termites in a parapet wall.

18. The parapet wall was torn down and rebuilt. During the course of the repair, the portion of the shingles installed by Rain was inspected.

19. The Claimants alleged that the shingle installation against the parapet wall was improper and thereby caused the water intrusion and termite infestation.

20. On March 3, 2022, the Claimants filed suit against SunnBuilders and Lowe's in the Circuit Court of Mobile, County, Alabama, Case Number CV-2022-900329.

21. The Claimants amended their complaint four times thereafter and added Rain and its principal Job Cachagua as additional defendants.

22. The underlying lawsuit alleges that the roof repair work required bonding and waterproofing customary roofing shingles to a parapet wall which required more skillfulness than a customary roof repair. Claimants claim that Rain failed to perform the work in a workmanlike manner and leakage resulted allowing significant water intrusion into the parapet causing damage to the framing and acting as a magnet for termites which caused significant infestation in the walls and significant damage.

23. On August 26, 2022, the Circuit Court granted a motion to compel arbitration.

24. During the arbitration, the Claimants filed their Fourth (and final) Amended Complaint on January 15, 2025. In the Fourth Amended Complaint, the Claimants asserted the following claims against SunnBuilders, Lowe's, Rain, and Mr. Chachagua:

Count I: Breach of Warranty (Lowe's)
Count II: Breach of Contract (Lowe's)
Count III: Fraud (All Defendants)
Count IV: Negligence (All Defendants)
Count V: Wantonness (All Defendants)
Count VI: Negligent and/or wanton Engagement, Training, and Supervision (All Defendants)
Count VII: Fraudulent Suppression (All Defendants)
Count VIII: Civil Conspiracy (All Defendants)

25. On June 22, 2026, the arbitration of the underlying lawsuit began. It concluded on June 30, 2026, and the arbitrator issued his final order on August 19, 2026.

26. In the Arbitration Award, the arbitrator dismissed all but Counts I, II, and IV. Ultimately, the arbitrator found in favor of Lowe's as to these causes of action, but found against SunnBuilders and Rain as to Count IV.

27. The Arbitration Award awarded the Claimants $241,093.44 in compensatory damages for negligent notification and installation of the shingle roof, and $50,000.00 in mental anguish damages to Ms. Sanders.

28. Based on the claims and the Arbitration Award, Kinsale does not owe indemnity to SunnBuilders under the policies because the award for compensatory damages is excluded under the terms of the policies, as all of the compensatory damages were as a result of the work performed by Rain, an independent contractor and/or subcontractor hired by SunnBuilders to perform the work.

29. Furthermore, Kinsale does not owe indemnity to SunnBuilders because the Arbitration Award does not constitute damages because of "bodily injury" or "property damage"

caused by an "occurrence," as those terms are defined in the policies. As a result, the policies' Insuring Agreements are not met and Kinsale does not owe a duty to indemnify SunnBuilders.

30. Kinsale does not owe a duty to indemnify SunnBuilders because the Arbitration Award is excluded from coverage under one or more exclusions in the policies.

31. A justiciable controversy exists among the parties regarding their legal rights, status, and liabilities under the policies with respect to the underlying lawsuit, the Arbitration Award, and whether Kinsale owes a duty to indemnify SunnBuilders.

32. Kinsale seeks a declaration that it does not owe a duty to indemnify SunnBuilders for the Arbitration Award entered against it in the underlying lawsuit.

**COUNT I – DECLARATORY JUDGMENT THAT KINSALE DOES NOT OWE A DUTY TO INDEMNITY FRANCHISE BECAUSE THE CONTRACTOR EXCLUSION APPLIES**

33. Kinsale re-alleges Paragraphs 1 through 32 as if fully set forth herein.

34. The policies contain an endorsement entitled "Limitation – Independent Contractors" (the "Contractor Exclusion") which states:

The following exclusion is added to this policy:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving acts of independent contractors or subcontractors contracted by you or on your behalf unless at the time of the "bodily injury", "property damage" or "personal and advertising injury" occurs:
>
> 1. The independent contractor or subcontractor contracted by you or on your behalf:
>
>    a. Maintains insurance coverage with limits of insurance equal to or greater than the insurance coverage and limits of insurance provided by this policy; and

b. Provides you with an endorsement or certificate of insurance indicating that you have been added to the independent contractor's or subcontractor's policy as an Additional Insured; and

c. Provides you with an endorsement or certificate indicating that the independent contractor's or subcontractor's insurance company has agreed to provide a Waiver of Subrogation endorsement in your favor; and

2. The contracts with the independent contractor or subcontractor you have hired contain hold harmless and indemnity agreements in your favor, indemnifying you against any losses or expenses arising from or related to work performed for you or on your behalf by such independent contractor or subcontractor.

35. Rain was an independent contractor or subcontractor of SunnBuilders when it performed work at the Claimants' home.

36. Some or all of the requirements for coverage set forth in the Contractor Exclusion were not met by Rain.

37. All damages awarded in the Arbitration Award arose from, were related to, and/or involved work performed by Rain.

38. The Contractor Exclusion applies to preclude coverage for SunnBuilders for the Arbitration Award.

39. Kinsale does not owe a duty to indemnify SunnBuilders for the Arbitration Award because coverage is excluded by the Contractor Exclusion.

40. A justiciable controversy exists with regard to coverage under the policies for SunnBuilders.

**COUNT II – DECLARATORY JUDGMENT THAT KINSALE DOES NOT OWE A DUTY TO INDEMNIFY SUNNBUILDERS BECAUSE THE INSURING AGREEMENT IS NOT MET**

41. Kinsale re-alleged Paragraphs 1 through 32 as if fully set forth herein.

42. The policies contain the following Insuring Agreement:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; . . . .

43. The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

44. The policies define "property damage" in pertinent part as follows:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

45. The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

46. The Arbitration Award does not constitute damages because of "bodily injury" or "property damage" caused by an "occurrence."

47. Kinsale does not owe a duty to indemnify SunnBuilders because the terms of the policies' Insuring Agreements are not met.

48. As such, a justiciable controversy exists with regard to coverage under the policies for SunnBuilders.

**COUNT III – DECLARATORY JUDGMENT THAT KINSALE DOES NOT OWE A DUTY TO INDEMNIFY SUNNBUILDERS BECAUSE THE ARBITRATION AWARD IS EXCLUDED BY OTHER EXCLUSIONS**

49. Kinsale re-alleges Paragraphs 1 through 32 as if fully set forth herein.

50. The policies contain the following exclusions:

**2. Exclusions**

This insurance does not apply to:

. . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in

a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j. Damage To Property**

"Property damage" to:

. . .

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

51. The policies contain the following definitions pertinent to the above exclusions:

**SECTION V – DEFINITIONS**

. . .

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

. . .

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

. . .

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failing to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failing to provide warnings or instructions.

52. All or some of the above exclusions apply to preclude coverage for the Arbitration Award entered against SunnBuilders.

53. Kinsale does not owe a duty to indemnify SunnBuilders because the above exclusions apply to preclude coverage.

54. As such, a justiciable controversy exists with regard to coverage under the policies for SunnBuilders.

**PRAYER FOR RELIEF**

55. Kinsale re-alleges Paragraphs 1 through 54 as if fully set forth herein.

56. Kinsale respectfully requests the following relief:

(A) That this Honorable Court will take jurisdiction over this matter;

(B) That this Honorable Court will order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C) That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Complaint within the time prescribed by law or in the event of failure to do so, suffer a decree pro confesso;

(D) That, upon final hearing of this cause, this Honorable Court will declare the rights, status, and legal obligations of Kinsale and Defendants under the policies;

(E) That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that no coverage is afforded to SunnBuilders under the

policies for the Arbitration Award entered against it in the underlying lawsuit; and

(F) That, if Kinsale is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

Respectfully submitted,

/s/ Brenen G. Ely

Brenen G. Ely (ASB-0366-E54B)
Seth T. Hunter (ASB-8506-S76H)
*Counsel for Kinsale Insurance Company*

**OF COUNSEL:**
ELY, McCURRY, & HUNTER, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elyfirm.com
shunter@elyfirm.com